All rise. Court is in session. Judge, if you're ready, I'll call the next case. Yeah, please do. Thank you. The next case is number 221062, La Liga de Ciudades de Puerto Rico v. The Financial Oversight and Management Board for Puerto Rico, et al. At this time, would counsel for the appellant please introduce himself on the record to begin. Good morning, Your Honors. My name is Guillermo Ramos Ruina, and I appear on behalf of the appellant, La Liga de Ciudades de Puerto Rico, which for short, I will refer to as La Liga. If I may, Chief Judge, to reserve two minutes. Yes, you may. Thank you. At the outset, I would like to clarify that La Liga agrees that there is no question that PROMESA empowers the Title III Court to block Puerto Rico laws, that the Oversight Board may deem to adversely affect a fiscal plan, be contrary to a fiscal plan, or is not accompanied to the certifications required by Section 204A of PROMESA, which are sections that recently the Court interpreted for the first time in an opinion that was delivered by Judge Lippes in late June of this year. But La Liga stresses that any blockage of the effects of the law is prospective, looks into the future, and the central issue to this appeal is whether PROMESA empowers the Court to undo the actions undertaken in reliance on the law before it was blocked, particularly in a case in which the municipalities were not the parties, were not allowed to intervene, and in a case in which the Oversight Board never sought a preliminary injunction to stay in the effects of the law. Let me ask you about the issue of reliance. I mean, as a matter of fact, the legislature, the governor, even before Law 29 was enacted and signed into law, the Oversight Board was making clear that it was deeply problematic, that it simply would not comply with the fiscal plan. And so given all of those warnings, the suggestion of reliance, it seems to me, rings a bit hollow. How do you justify the reliance on the notion of reliance, given all of that advance notice that this law would not stand, and then they don't seek to the validity of the law? So where does this notion of unfair reliance come from? The notion, if I may answer your question, the notion about prior notice by the Oversight Board, even when the law was being discussed, considered by the legislature, is something that the board argued in its initial brief before this Court, but then they filed a corrected brief in which they retracted from that position. So there is nothing in this record that there were any indication on the part of the Oversight Board why the law was being considered by the legislature that it was in violation of PROMESA. And that's something very important to have in mind. The reliance, Your Honor, context is key. Law 29 was enacted in May 17, 2019. Immediately thereafter, the municipalities, and as you know, Law 29 accepted the municipalities to make certain payments to the retirement system and to the universal health plan. Immediately thereafter, the municipalities embarked, and that's alleged in the complaint that we filed before this Court, the municipalities embarked in the process of preparing the budget for the next fiscal year, which was to begin on July 1st of that year, 2019, and relying on Law 29 and the exemptions of payments from those that the law provided, the municipalities did not allot any funds for that fiscal year to make the payments for which they would have been exempted and allotted those funds that they would receive for other expenditures. Okay? And they continued, and then they acted that way for a whole year until finally, almost a year later, after the April 8th, 15th opinion and order, and which did not become inventive until May 6th. That's when the municipalities, you know, the rug is taken out of their feet, and now the municipalities have these obligations that were never budgeted in their annual budgets. To obtain the outcome you want, wouldn't the law in question that the Oversight Board is trumping have to be implemented or enforced? I'm sorry, the last part of the question. Have to be implemented or enforced? Well, yes, but it was. During the time, during the pendency of the litigation... No, but I'm saying that in order to do what you want now, wouldn't to accomplish that objective entail implementing and enforcing the very law that's trumped? And right now, isn't there a bar against it being implemented or enforced? Well, I would answer your question. At the time that the... I know at the time, I'm saying right now you want something to happen. Yes. Is there any way for that to happen without implementing or enforcing the law? Well, yes, and our position is that the law was in fact in place and enforceable since its inception. No, I understand that. We're not quite in sync. What do you practically speaking want to have happen? Don't you want some funds to be transferred or something? Yes. To do that, let's say tomorrow, is there any way to do that without implementing or enforcing Law 29 tomorrow? The answer is no, we cannot. Law 29 must have a temporal effect. In order for that to happen. But what we're arguing is that that temporal effect already occurred in passing time and it wasn't... But I understand you're claiming certain things because of the law's past existence. Give rise to something under the law. But to then carry out that thing, doesn't there need to be a subsequent implementation or enforcement of that law, which is a post hoc thing and the interceding event is the action of the board? Do you see what I'm asking? I'm not pretty sure I understand your question. Let me see if I can try to answer it. And if I do not answer your question, then you can clarify it for me. The law was implemented until the opinion of another became effective. As a result of that, the municipalities did not make any payments to the retirement system or the health program. And then they said, well, I'm going to start paying from now on. And then the board said, no, you owe me for the full year that this case was being litigated. And the municipality said, I have no budget for that. I did not provide for any budget on the Puerto Rico law. I cannot pay obligations that were not budgeted for. And then the oversight board, then you have a debt. Right. I guess my simple question is when you now raise the defense against the board's request, let's say that happens tomorrow. Won't you in doing that be seeking to implement or enforce tomorrow? Well, the way I see it. Law 29. I'm sorry. Yeah. You get the force of the question. I mean, maybe it's wrong, but I just want you to answer that. The way I see it is that who trumped our position is that whatever happened before the effectiveness of the order that was issued by the court was valid and had to be respected. And it are the actions, the subsequent actions of the board that want to do away with that. So it is the board, by its interpretation of the judge's decision, that is then impeding that the effects of the law, which it had, which we are adamant about that it had, must be complied with. Any further questions on this? Yeah. Just quickly. I guess this is a something of a follow up to Dr. Barron's question. The court allowed for three weeks before it entered the orders, during which time the governor, other interested parties could reach a settlement of the payment of the funds from the municipalities, which had not been paid for a year. And I gather the mechanism for that was that using the acronym CRIM, which collects property tax revenues that come from the municipalities and that are supposed to be sent back to them. That money would not be sent back to them until this debt that the municipalities owed to the Commonwealth was satisfied. Is that the mechanism for repaying this debt? There were two different mechanisms. During the time that the law was, before the order, CRIM made some collections and made disbursements pursuant to how Law 29 provided, made disbursements to the municipalities during the year, because typically CRIM makes the disbursements more or less at the end, perhaps at the middle of the year, and then at the end of the fiscal year. Fiscal year, remember, runs from July 1st to June 30th of each year. So some municipalities had already received funds from Law 29 that they were going to use for the matters that they had to budget for, and they had made no payments for the matters that then suddenly become due retroactively. So then there were two types of debts. You have to return to me, to CRIM, what I gave you pursuant to Law 29, and then you have to pay to CRIM so that CRIM pays out to the retirement system and to the health plan the contributions that Law 29 exempted you. And I am not going to release any of the funds that I collect. Remember, CRIM is a fiduciary for the municipalities. It's like a servicing agent. Think of it as a servicing agent with a pool of mortgages with different investors. The service agent collects and then distributes to the different owners of the funds. CRIM is a fiduciary, and CRIM, pressured by the board, said, I am not going to make any disbursements for anything else that I may owe you until you repay me for the monies that I disbursed to you without reason, because now there was no reason for that disbursement, and before you reimburse me the debt that you now have retroactively. Did I answer your question? Yes. Yes. One last question on standing. Is there anything in the record, well, as I understand the standing law, for a mayor to have standing on behalf of municipality, the easiest way is if the mayor is seeking standing based on an injury to the mayor's office. I take it your claim is that the injury is to the municipality, not to the mayor's office as such. It is to the municipalities, but it is to the municipalities. The funds are to the municipalities. Is there anything in the record indicating that these mayors are authorized by their municipality to bring this suit? Other than the LA, no, there's nothing in the record, but under the law, the mayors are required to defend the funds of the municipalities and to act accordingly, and they cannot make any disbursements if they are not budgeted for, which they ultimately did for the reasons I explained before. Okay. Thank you. Thank you, counsel. At this time, would counsel, would attorney Kowalczyk please introduce himself on the record to begin? Good morning, your honors. May it please the court. My name is Lucas Kowalczyk. I represent the Financial Oversight and Management Board for Puerto Rico. The only issue properly before this court is whether the board incorrectly interpreted the Law 29 order. Everything else is a collateral attack on a final order issued two and a half years ago in another litigation. As to the supposed misunderstanding of the order, the order speaks for itself, and it's clear that the court invalidated Law 29, and to the extent there is any conceivable doubt, Judge Swain, in the decision in this case, made very clear and confirmed the plain language of that order and said that the order could not be clearer. So there was no appeal from that initial decision. Is that correct? That is correct. No party appealed. Could you just address one point? Your opponent said, and I may have missed this, but that there was a corrected brief filed that withdrew the representations in the brief that I the board had advised the governor, the legislature, that passage of Law 29 would be contrary to the fiscal plan and would be subject to challenge if it were adopted. Did you withdraw those representations at some point? No, there was some misunderstanding about those communications before Law 29 was enacted. But the portion that remains still in the brief and is true is that the board notified the governor and the legislature that the law would be significantly inconsistent with the board's fiscal plan. That remains to be true and is in the record. Okay. Thank you. As to whether the court had authority to invalidate Law 29, of course it did. But as I mentioned, that question should be foreclosed because it relates to an order in another litigation and would be a collateral attack on the finality of that order. But of course, courts do have authority to invalidate laws. In this instance, Judge Swain simply declared that a territorial law violated no less than three provisions of federal law. And as a result, the territorial law could not give rise to rights and obligations and duties at the time of its passage. Congress in PROMESA provided the basis for invalidation of territorial laws because it imposed restrictions on those laws, among them in Section 204C, which is a statutory prohibition on actions taken by the legislature. The legislature cannot effectuate reprogramming of funds without a board authorization. There's no dispute that there was no authorization by the board. Congress gave the board the power to enforce those restrictions and to go to court and seek appropriate remedy. And that is exactly what happened in the Law 29 litigation. Without that power to invalidate laws, all the restrictions that Congress carefully placed in PROMESA would be obliterated. Counsel, put aside the issue of power for a moment to declare a law invalid of initio. I mean, we're dealing with remedies in both injunctions, declaratory judgments, which are equitable by nature. So it seems to me that in arguing that the municipality should not be required to now pay the money that for a year they did not pay, that there is something unfair about that, in part because of reliance on an existing law. Why isn't there some merit to their argument that although the board challenged the law immediately, you did not seek to block implementation of it, which you could have done. That's often done in these situations. You seek a temporary restraining order, a preliminary injunction that would prevent the law from taking effect. If you had done that and had succeeded, I guess we wouldn't have any of these problems. Why wasn't that done? Isn't that relevant to sort of the equitable analysis that might apply in this situation? I don't think so, Your Honor. I don't think the facts in this case were conducive to a TRO. Obviously, irreparable harm has to be shown. The board made a decision not to seek a TRO. But I don't think that's relevant to the question of whether the court has authority to invalidate ab initio, a law that blatantly disregards congressional direction. And in terms of the fairness point, Your Honor, all 29 relieved the municipalities of their obligations to pay as employers for their employees' health care and pension, and imposed that burden on the commonwealth's restructuring case. The board was simply trying to restore the status quo so that the municipalities would carry their own, pay their own. This just hinges as a textual matter, if I'm not following, on whether the prohibition against the enactment of a law means that you can read into that a grant of authority ab initio post-enactment. Correct? Well, I think it's clear that it may be helpful to clarify what Judge Swain did and what she didn't do. She found that Law 29 violated PROMISA. And as a result of it, as she explained in this section on . . . Well, let's not do it your way. Let's do it my way. Okay. Okay. So as I understand it, the statute has a prohibition against the enactment. Yes. And that's the textual hook for the remedy that was imposed of declaring the law void ab initio. In other words, voiding it post-enactment as of the time of enactment. Correct? Right. It's declaring that the law could never give rise to any rights and obligations from the moment of enactment. And the authority to do that must come from the statute, the PROMISA statute, imposing the prohibition against enactment of a law. Right. And PROMISA . . . Okay. So that's just a pure interpretive question. Does the prohibition against enactment entail the authority to void ab initio a law that was enacted post-enactment all the way back? Which is, I'd say, somewhat unconventional remedy. Yes. Right. And so we might say, gee, in construing it, we could look at what does equity generally allow courts to do, about which there's all kinds of discussion right now about even with vocator of rules in the administrative context, which might make one wary of construing that grant of power. So if we thought all of that, as I understood what you're saying is, who cares, because there was already an order doing it, and we're now at a second stage, post that order, which was never appealed from. Right. And the only question is, what do we do now, given that the unappealed order granting that remedy exists? Do I have it right? That is correct. Okay. So now, starting today, if we assume that it was void ab initio, your argument then is, that being so, there just can't be any basis for the argument, because they've already conceded it by not appealing the prior order. End of case. Is that the idea? That is correct. Okay. On the standing issue, what is the significance of the fact that the mayors here seem to be asserting a general municipal financial interest, rather than any more tailored thing to the office of the mayor, for purposes of determining whether we have Article III standing? Right. You're correct, Chief Judge Barron. There's nothing in the record that would represent the municipal interest. The board did not make a standing argument below, but of course, this court has to ascertain itself, whether it has jurisdiction. Well, that's true, but I take it there's no Article III problem with the municipality authorizing a mayor to represent its interests of a general fiscal nature, as opposed to the office of the mayor itself. Right. To the extent there's authorization to represent the general interest of the municipalities, there wouldn't be an Article III standing problem. Well, I guess two questions on that. One, the question of whether there's capacity, that's waivable. Right. And that has been waived? Yes. Okay. Assuming it's been waived, is it clear that the mere fact that a municipality authorizes a mayor to represent the city's general financial interests counts as an Article III injury that the mayor on its own can bring, not on behalf of the municipality, but just as the mayor? I'm not sure, Your Honor, that this issue obviously wasn't raised and briefed. Do we need to figure that out? Well, it's a threshold question, so possibly, I think the court can simply affirm on the basis that the board did not misunderstand the order in the law to endanger litigation. I think that's the only issue fairly raised in the briefing below. Thank you. Thank you, Counsel. At this time, Attorney Pavel, if you could please introduce yourself on the record to begin. You have a two-minute argument. May it please the Court, Ashley Pavel of O'Melveny and Myers on behalf of the Executive Branch Defendants, a FAF, a SES, and the ERS Administrator. Dismissal of the Executive Branch Defendants should be affirmed because the complaint does not state a claim against any of these defendants and does not allege that any of the Executive Branch Defendants engaged in any conduct that harmed La Liga. La Liga alleges its injury is the consequence of the Title III Court invalidating Act 29 in a separate proceeding, which was the result of the Oversight Board's challenge, and the Oversight Board interpreting that order to apply retroactively and require back payment from municipalities of amounts that were not paid during that time. La Liga does not allege that the Executive Branch Defendants are responsible for any of this. This requires dismissal of claims against the Executive Branch Defendants, both for lack of Article III standing and for failure to state a claim. La Liga's response to these arguments in its reply brief did not favor in favor of reversal. La Liga accuses the Commonwealth Defendants, the Executive Defendants, could have decided not to follow the Oversight Board's instructions, but that argument just doesn't make any sense as to the Executive Branch Defendants because La Liga has not identified any Oversight Board instruction that the Executive Branch Defendants followed to its detriment. At bottom, this is a dispute between La Liga and the Oversight Board and the Executive Branch Defendants have no place in this litigation. Accordingly, the Title III Court's dismissal order as to the Executive Branch Defendants should be affirmed. Unless the Executive Branch Defendants have no place in this litigation, La Liga has no place in it. Thank you, counsel. At this time, if Attorney Van Dertis can please introduce himself on the record. Good morning, Fernando Andrade for CREAM. Very brief, not to be repetitive. First, we join the argument raised by the preceding counsel for Apeliz. And second, at all times, CREAM has complied with at least three things. It has complied with a fiscal plan, has complied with the directives from the Financial Oversight Board, and has complied with the terms of the order as requested to by the Board. We must remember CREAM is a covered entity under PROMESA and as such is bound to the directives of the Board. In effect, we are an entity that handles, we are a municipal entity. We have a fiduciary duty to the duty. However, we must comply with applicable law. And the applicable law at this point in time is that law entered by the District Court of the United States. And that would be our argument, Your Honors. Thank you. Thank you. Thank you. At this time, if Attorney Ramos-Luena could please reintroduce himself on the record. He has a two-minute rebuttal. Good morning again, Your Honors. Guillermo Ramos-Luena on behalf of La Liga. As to a collateral attack, I must stress that the municipalities were not parties to the litigation that reached the decision regarding Law 29. And there were two other associations of mayors that attempted to participate and intervene. They were denied, and the municipality of San Juan also intervened, and it was denied. And to the extent that it is now being brought as a collateral stopper argument, it was waived by the Board. It was never raised in the court below, and it's being raised for the first time on appeal. And we have cited ample case law in our reply brief to the extent that it's waived. So that takes care of that. And as to the inequities, Your Honor, we, at page 10 of our brief, we cited two Supreme Court decisions, one particularly Lemon v. Kurtzman. And the court ruled in that, or cautioned in that decision, that when fashioning a remedy at the time of enjoining a state law, the trial court must apply familiar or equitable principles. Can you just explain to me the relief you're seeking? The relief we're seeking is that the municipalities get the benefit of Law 29 provided to them while they're in effect. That's fine. But in practical terms, in terms of transfers of money, the relief will enable what to happen? You not to pay money, or somebody to pay you money, or both? Both. For the reasons I explained, that there were disbursements made during Law 29's time before the judge's decision, and they had to pay it back. And then they had to... And the relief you're seeking would prevent PERMESA from compelling you to pay those back to them now? Yes. Okay. Or pay it to whoever you have to pay it to. They would have to return whatever they... So you want an injunction against having to return monies going forward? Well... And? No, going forward, no. Because our position is that... I understand. But in practical, like tomorrow, something's going to happen. And the thing that would happen would be you'd have to return monies. And you want an injunction that would stop that from happening, correct? Well, the municipalities have been returning monies all this time. And to be quite honest, I don't know if the municipalities... That's what I'm asking. What is the relief? Is the relief going to do anything about those prior payments? Well, our position is that is not a legal debt. That is not a valid debt. So whatever monies the municipalities were forced to pay, because... So you want an injunction requiring those monies to be paid? To the municipalities, yes. Who is that injunction going to run against? Well, to... Or are you just seeking declaratory relief? No, it has to be... I mean... The board cannot give us that remedy. I mean, the board is not going to give us money. So that's why these... That's why I have the government... The government police here. Is to force them to pay you back. Correct. They would have to be the ones to pay back. They were the ones to receive the money when they didn't... They were not entitled to, according to our theory. All this money that CRIM has been withholding, I think pursuant to the settlement referred to earlier, has been withholding as a way of satisfying municipalities' debt. You want them to stop withholding that money and send it back to municipalities. Because the municipalities, their budgets have been severely constrained because the money that they were relying upon, they're not getting. And that's having a real effect on the municipal budget, right? And they ended up paying debts that were not budgeted for, which is a violation of... But the money is going to be flowing both ways. I mean, you want that money sent back to municipalities, but they now have an obligation to make the payments that, under Law 29, they no longer had to make. So the money is going to be flowing both ways, right? Yeah, but... Yes, but once the judge issued the order, the municipalities have been paying from then on forward. And to this day, they have been making the payments that PROMESA had accepted then. But the municipalities you represent, you said, weren't subject to that order, so didn't have to make those payments, right? I'm sorry? The municipalities you represent were not subject to that order, you say? No, the order, the municipality... No municipality was a party to that action. Right, so... So neither the CRIM... So they chose in response to that order to pay, but they were under no legal obligation by order to do so, correct? I understand practically why they did it. I'm not saying... They were forced. But there was no order requiring it, correct? There was no order, but they were forced because that's the interpretation, remember. I got it, I got it. CRIM has them all. I got it, I got it. Okay. Thank you. Thank you, Your Honor. Thank you. Thank you. That concludes argument in this case.